PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* RAFAEL RODRÍGUEZ DÍAZ, Defendant and Appellant.

No. 6829. Argued December 8, 1937.—Decided January 11, 1938.

*Severo O'Neill Torres* for appellant. *R. A. Gómez, Prosecuting Attorney,* for appellee.

MR. CHIEF JUSTICE DEL TORO delivered the opinion of the Court.

The District Attorney for Arecibo filed an information against Rafael Rodríguez Díaz, charging him with a violation of Section 11 of Act No. 67 of 1934 (Laws, p. 458), consisting in his having used, illegally, willfully, and maliciously, a cartridge of dynamite for the purpose of injuring the residence of Rosario Freytes, by causing the same to explode upon one of the beams of the balcony of said house.

The trial was held on March 30, 1937, and the court found the defendant guilty of the offense so charged, and sentenced him to pay a fine of $200, and, in default thereof, to be confined one day in jail for every dollar not paid, such imprisonment not to exceed 90 days.

Rodríguez appealed to this court, and contends in his brief that the trial court erred in overruling his motion for nonsuit and in convicting him on insufficient evidence.

The evidence for the prosecution comprises the testimony of Rosario Freytes, Hipólito Nango Larregui, Carmen Nieves, Luis Freytes, Rafael del Valle Sárraga, and Alfredo Fabiani, and that of the defense, introduced after the defendant's mo-

tion for nonsuit had been overruled, in the testimony of Herminia Real, José Navedo, and the defendant himself.

Rosario Freytes testified, in substance, that he resides in Manatí where he has three houses, in one of which he lives with his family; that he is acquainted with the defendant, to whom he had rented a room in another of his houses about 30 feet from the one in which he lives; that on March first he had met him and asked him if it was true that he had said that to get him to move out of the room, the rent of which he had not paid for 3 months, the witness would have to give him $5, to which the defendant replied that that was so; that the witness had replied that he had 8 children and was not thinking about taking on any more; that 4 days later the bomb exploded in his house.

Larregui testified that about 11:30 at night on March 4, 1936, he felt an explosion; that prior to the explosion he had met the defendant, talked with him, and each had gone on to his respective house, which were close by; that a little later when he was going to bed, he heard the explosion, got up, and saw people standing in front of Freytes' house, went out and could see the effects on the house: a broken beam and the roof littered with boards; that he went back after a few minutes without seeing the defendant.

Carmen Nieves, 44 years old, married, and with 10 children, and who lives between the houses in which Freytes and the defendant live, her house being separated from that of the defendant by a narrow alleyway, said that she heard the explosion, got up, and saw the injury which it had done to Freytes' house; on the following day about six in the afternoon, she saw the defendant "moving his things." She went out on the balcony and began a conversation with Luis Freytes, who was passing by there, when they heard "the voice of Rafael Rodríguez Díaz inside the house, saying: 'I blew up one and there are still two to go' to his wife. I could hear him well. Luis went on his way . . . and I went inside."

Upon repeated cross-examination, she persisted in what she had said, and stated further, that she was not an enemy of the defendant, they were *compadres*. "Of course," she said, "justice goes even into the home. If a brother of mine were treacherous and blew up somebody's house, against a brother of mine, I would speak the truth."

Luis Freytes, brother of Rosario, corroborated entirely the testimony of Carmen Nieves. He was talking with her when he heard the defendant say "these people think I am a fool; I blew up this one and I still have two houses to go" and added: "Carmen looked at me and I at her, and I went on my way and left. When I came back from town I told Rosario about it. It was turned over to the police for investigation, and the Saturday following we went to the municipal court to swear the complaint."

Fabiani, a policeman, stated that he went to the scene of events and found the Freytes family crying, that under the house he found a fuse and a piece of the beam which the explosion had destroyed; that then and there the defendant was pointed out as the one who did it; that they searched his house and found nothing in it, they arrested him and released him, and arrested him again 4 or 5 days later.

The expert, del Valle Sárraga, after having examined the fuse found there, stated, in answer to a hypothetical question based on the description given by the witnesses of the explosion and its effect:

"If the loud noise of a violent explosion is heard and if at the same time it be observed that the floor of the balcony shows some holes of greater diameter than those in the roof and elsewhere and if furthermore fragments of the floor were seen showing that they had been shattered by the expansion of gases, something which happens in all explosions, a violent gaseous expansion, that question may be answered in the affirmative, that what happened was an explosion of a detonating and explosive chemical substance, and that the explosion went from underneath to above and occurred immediately under the floor of the balcony."

Such in substance was the evidence which the defendant in his motion for nonsuit contended was insufficient.

After the motion was overruled, the wife of the defendant, Herminia Real, testified that when the explosion occurred, she and her husband were in bed and got up and went to see the effects; that in about half an hour the police searched their house and found nothing; that on the day following while they were moving, her husband made no statement whatever with respect to his having blown up a house and his intention to blow up two more; that she was a *comadre* of Carmen Nieves, but that they had had a quarrel about a daughter.

José Navedo, who was sleeping in a room adjoining that of the defendant, stated that on hearing the explosion, he called the defendant and got no answer, and that he called him again and he answered and went with him to the scene of events.

Finally the defendant himself testified that he was a carpenter, that on the night of the fourth he got home between 11 and 11:30, and after he had gone to bed, he heard an explosion which lit up the whole house and shook the bed; that people began to say that they had blown up the hospital and just then Navedo called him and he asked why they should get up if it was the hospital; that a few moments later they said that it was in Freytes' house, and they went there and stayed a few minutes, then went back to bed and were there when the police came to search the house and arrested him.

He admitted that he had had the conversation with Rosario Freytes about the rent of the house in which he was living, but said that he was not annoyed with him, that what he told him was that he could not pay because he was out of work. He believes that not even if he were crazy would he have made the statements which the witness Nieves put in his mouth. He assures us that Luis Freytes was not anywhere around there; that while he was moving, members of the Rosario Freytes family were present, *"doña* Juana, who

died suddenly a little while ago, and his mother-in-law;'' that there had been a quarrel with the witness Nieves. He denies absolutely that he committed the crime of which he is charged, and believes that his arrest was due to the fact that Rosario Freytes told the police that he suspected him, ''because he had dunned him for the rent, and it had not been paid, and he had gotten very angry.''

After a careful study of the case, we are of the opinion that since the evidence for the prosecution was believed in its entirety by the trial court, it is impossible to hold that it is so insufficient as not to sustain a judgment of conviction.

That the explosion occurred is evident; that the defendant had a conversation with the owner of the house in which he was living which shows him to be a man capable not only of failing to fulfill his obligations but of demanding that he be paid, instead of paying, to be gotten rid of, is also clear if one believes the testimony of Rosario Freytes; and that it was he who sought to blow up his landlord's house with an explosive, came from his own lips at the moment in which he and his wife were engaged in moving from the house where they owed rent, if credit be given to the testimony of Carmen Nieves and Luis Freytes.

The trial judge satisfied his conscience as to-the commission of the offense and as to the veracity of the statements of two witnesses. This he could do, and we must respect his conclusion.

The appeal must be dismissed and the judgment affirmed.

Mr. Justice Córdova Dávila took no part in the decision of this case.